**Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000355
06-FEB-2015
12:55 PM**

NO. CAAP-14-0000355

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
WILLIAM McDONNELL, Defendant-Appellant


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-CR NO. 13-1-0002)

CONCURRING AND DISSENTING OPINION
(By: Reifurth, J.)

I concur with the majority's analysis concerning Defendant-Appellant William McDonnell's first point of error. In regards to McDonnell's second point of error, I concur with the majority that KM's disclosure was incomplete and consequently agree that Dr. Bivens's testimony concerning incomplete disclosure was relevant. I also agree with the majority here and the dissent in the Hawaii Supreme Court's denial of certiorari in *State v. Transfiguracion*, No. SCWC-11-0000048, 2013 WL 1285112, at *5 (Haw. Mar. 28, 2013), that Dr. Bivens's testimony in the instant case concerning delayed reporting is admissible under *State v. Batangan*, 71 Haw. 552, 557-58, 799 P.2d 48, 51-52 (1990). I write separately to address McDonnell's argument that Dr. Bivens's testimony concerning the characteristics and practices of typical child molesters and the "abuse process" amounted to improper "profile evidence."[1]

For the reasons expressed in my separate concurrence in *State v. Kony*, No. CAAP-12-0001114, 2014 WL 812997, at *4 (Haw.

---

[1] "'Profile evidence' generally 'describes sets of observable behavioral patterns,' which can be used 'as a tool to identify crime suspects.'" *Transfiguracion*, at *6 n.5 (quoting Christopher B. Mueller and Laird C. Kirkpatrick, *Evidence*, § 7.22 (4th ed. 2009)).

Ct. App. Feb. 28, 2014), *cert. granted*, No. SCWC-12-0001114, 2014 WL 3513030, *1 (Haw. July 15, 2014), I respectfully dissent. I believe that the potential prejudice of the profile evidence outweighs its probative value and, therefore, would conclude that the trial court abused its discretion in admitting it.

At trial, Dr. Bivens testified that his Ph.D. dissertation "administered test data to distinguish some of the traits that child molesters have that normal men don't have." Dr. Bivens also introduced some empirical references into his testimony on the behavior and relationships of child molesters. In describing molestation, Dr. Bivens stated that "probably 80 percent of the time there's not any real physical force involved. It's much more manipulation than coercive in that way." Dr. Bivens added that "the vast majority of the time, 85 percent of the time, let's say the child has a pre-existing nonsexual relationship with their molester."

When asked to describe what studies "show[ed] about the abuse process," Dr. Bivens testified that one source of information involved convicted molesters "describing how they go about doing the abuse." Dr. Bivens subsequently described "four primary ways that have been identified as being typical of most molestations[,]" and were "characteristic of the vast majority of molestation incidents": seducing and testing, masking sex as a game, emotional and verbal coercion, and taking advantage of a child in a vulnerable position. In testifying on those "primary ways," Dr. Bivens refrained from citing specific percentages or other numerical references in testifying about the "abuse process," but described what the molester "will establish" or "will do" in those hypothetical scenarios, or that the molesters would "often" or "frequently" report certain behavior. These statements included, "[t]hey sort of lie to themselves. It helps them continue on with their crime."

I share the concern of the dissenting justices in *Transfiguracion* that "[i]n contrast to the minimal probative value of Dr. Bivens['s] testimony, [concerning profile evidence and the "abuse process"], the potential for prejudice arising from the introduction of evidence regarding the abuse process was

high." *Transfiguracion*, at *9. I agree as well that it was possible to rebut the common stereotype of child molesters "without introducing evidence suggesting that the testimony of the complaining witnesses matched the 'typical' sexual assault." *Transfiguracion*, *8.

Here, Dr. Bivens's statistical testimony regarding child molesters appears to be improper profile evidence. As the *Transfiguracion* dissent stated, "testimony that a certain characteristic is commonly possessed by a certain type of criminal may suggest to the jury that an individual with that characteristic is guilty. However, such testimony *actually has no probative value for that purpose*, because it says nothing about how many innocent individuals also possess that characteristic." *Transfiguracion* at *6. Conversely, the prejudicial value of such evidence could be significant, as "potential prejudice would arise because the expert's testimony could 'guide the jury to a conclusion' that the complaining witnesses were telling the truth by demonstrating that the details in their testimony matched the details in a typical child abuse case, even though fabricated testimony also may include such details." *Id.*

Similarly, Dr. Bivens's testimony concerning the "abuse process" appears to have been more prejudicial than probative, as his description of the "four primary ways that have been identified as being typical of most molestations" would likely suggest to the jury that KM's testimony described a "typical" sexual assault. When Dr. Bivens explained "seducing and testing," he testified that a molester would "slowly incorporate sexual touch into the relationship." This followed KM's testimony that McDonnell gave her "sexual hugs" and touched her following a foot massage. Similarly, Dr. Bivens testified regarding "emotional and verbal coercion" that "often involves sort of bargaining or bribing[.]" KM had testified earlier that McDonnell came up with the term "benefits," meaning that KM would let him touch her and would not tell anyone in exchange for things she wanted, like games or internet access. Additionally, Dr. Bivens stated that "taking advantage of a child" was a

phenomenon that "most often refers to approaching a sleeping child." KM had testified about an incident that occurred while she was sleeping with McDonnell on his bed.

Having earlier determined that Dr. Bivens's testimony on delayed disclosure was admissible under *Batangan*, the *Transfiguracion* dissent concluded that "Dr. Bivens'[s] testimony regarding the abuse process did not possess the same probative value as his testimony regarding delayed disclosure." *Id.* Similarly, here Dr. Bivens testified as to the behavior of sexually molested children and reasons why a child would delay disclosure after he had completed his description of the "uniform" actions of child molesters. Accordingly, here, as in *Transfiguracion*, the probative value of Dr. Bivens's testimony on the "abuse process" did not possess the same probative value as his testimony regarding delayed disclosure.

The majority states that Dr. Bivens "did not profile McDonnell as a sex offender" because "he did not know the facts of the case." Majority Opinion at 11. In *Transfiguracion*, Dr. Bivens also testified that he "had no knowledge about the facts of the case." *Transfiguracion*, *9 (quoting *State v. Transfiguracion*, CAAP-11-0000048, 2012 WL 5897413, at *2 (Haw. Ct. App. Nov. 21, 2012)) (internal quotation marks omitted). The *Transfiguracion* dissent explained that "Dr. Bivens may not have been aware of the facts of the case, but [the State] was[,]" and "[b]y the nature of the questions asked, studies . . . may be lined up with the testimony of the complaining witnesses." *Id.* The dissent concluded that "such testimony would lead the jury to improperly conclude that the complaining witnesses were more likely to be telling the truth based on the statistics concerning perpetrators that was provided by Dr. Bivens." *Id.* So, I believe, it did here.

Dr. Bivens's testimony provides useful context in which to consider the testimony of child-witnesses in sex abuse cases. Nevertheless, courts must be particularly careful to consider the degree to which common characteristic testimony of this sort undermines the foundational principles of our criminal justice system.

I conclude, therefore, that the family court abused its discretion in allowing Dr. Bivens to testify regarding the characteristics and actions of typical sexual abusers. As the evidence against McDonnell was not overwhelming, the error was not harmless. For the foregoing reasons, I would vacate and remand for a new trial.

DATED: Honolulu, Hawaiʻi, February 6, 2015.

Associate Judge